COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bumgardner and Humphreys


BERNARD DUNCAN

                                        MEMORANDUM OPINION*
v.    Record No. 0431-00-2                  PER CURIAM
                                          SEPTEMBER 5, 2000
DATA SERVICES AMERICA AND
 VIRGINIA EMPLOYMENT COMMISSION


            FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
                  Charles L. McCormick, III, Judge

            (Bernard Duncan, pro se, on briefs).

            (Mark L. Earley, Attorney General; Lisa J.
            Rowley, Assistant Attorney General, on
            brief), for appellee Virginia Employment
            Commission.

            No brief for appellee Data Services America.


        Bernard Duncan contends that the Circuit Court of Mecklenburg

County (circuit court) erred in affirming a decision of the

Virginia Employment Commission (Commission) that disqualified him

from receiving unemployment compensation benefits effective

January 3, 1999.  The Commission (1) found that Data Services

America (employer) discharged Duncan for misconduct connected with

work under Code § 60.2-618(2)(a); and (2) denied Duncan's request

to present additional evidence and testimony pursuant to 16 VAC

5-80-30(B) of the Rules and General Rules Affecting Unemployment

_____

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Compensation. Duncan further contends that the Commission's decisions were procured by fraud and deceit; that he was denied due process of law; and that the Commission's decisions were based upon an incomplete record.[1] Upon reviewing the record and the briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily affirm the circuit court's decision. See Rule 5A:27.

## I. Sufficiency of Evidence of Misconduct

"[I]n any judicial proceedings 'the findings of the commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.'" Israel v. Virginia Employment Comm'n, 7 Va. App. 169, 172, 372 S.E.2d 207, 209 (1988) (citation omitted). "In accord with our usual standard of review, we 'consider the evidence in the light most favorable to the finding by the Commission.'" Wells Fargo Alarm Servs., Inc. v. Virginia Employment Comm'n, 24 Va. App. 377, 383, 482 S.E.2d 841, 844 (1997) (citation omitted).

---

[1] Duncan's opening brief contains a great deal of argument and numerous issues presented for consideration, many of which concern matters that are not relevant or proper for consideration by this Court on appeal. Accordingly, we have narrowed the issues which we will consider on appeal to those considered by the Commission and the circuit court. In addition, in rendering our decision we considered only that evidence which is in the record and was properly before the Commission when it rendered its decision.

So viewed, the evidence established that Duncan began working for employer as a data entry trainee on June 23, 1998. Employer is a data entry service bureau, which processes a large quantity of Medicaid claims. A data entry trainee must meet certain speed and accuracy standards over a specific period of time before being promoted to a full-fledged operator position. Once employees reach operator status they receive incentive pay based upon their keystrokes. Normally, employer allowed a trainee six weeks to attempt to attain operator status. However, employer allowed Duncan to remain in trainee status longer than usual, because it hoped he would eventually be able to meet the speed and accuracy requirements. Ultimately, employer terminated Duncan from his employment on January 7, 1999.

In a December 8, 1998 letter to Jean Hofheimer, employer's president, Duncan expressed his dissatisfaction with his pay, his belief that he was being treated unfairly and not being permitted to use the computer equipment with which he felt most comfortable, his belief that when he discussed personal business with his supervisors they divulged it to others, not receiving telephone calls when others had been permitted to do so, and his belief that he was being harassed and discriminated against on the basis of his race.

As a result of the December 8, 1998 letter, Hofheimer and her son, employer's vice-president and regional manager, met with

Duncan on December 14, 1998.  They explained issues of pay and tried to resolve Duncan's concerns regarding discrimination and harassment.  Duncan did not seem to agree with what he was told, but he did not object either.

Duncan did not mention these matters again until January 4, 1999, when he sent employer another letter.  In that letter, Duncan raised some of the same issues he had raised in the December 8, 1998 letter, concerning his pay, the type of computer he was working on, and promotion to operator status.  Duncan's January 4, 1999 letter also contained the following language:

> I am going to tell you what my intentions are.  First of all, I am going to my friend in Richmond, who works for the IRS.  Then, I am going to the EEOC and the Labor Board, and the Better Business Bureau.  And, if you don't restitute me, I will see you in civil court.  I am not playing one bit.
>
> You are using people in this "shop".  How many have you used is the question?  This is tantamount to fraud, tax evasion, grand larceny for the money you have pilfered from workers like me and whatever other violations.  I want mine with interest.  You don't care about me because, if you did, I wouldn't be going through this now.  I am speaking for Bernard Duncan only, but if you don't do the right thing, it will include any and everybody whoever worked there.  I want my money and I mean it.

Hofheimer perceived Duncan's January 4, 1999 letter as extremely threatening.  As a result, on January 7, 1999, Hofheimer sent Duncan a letter terminating his employment.  Hofheimer

testified that the sole reason for Duncan's termination was the tone of his January 4, 1999 letter.

In Hofheimer's January 7, 1999 letter, she informed Duncan as follows:

> I can only conclude that you and DSA will never arrive at a solution to your perceived problems.  You have been provided training and opportunity just as all other employees of the company.  I realize that you do not see it that way, but believe me, the company has no desire to keep keyers from making operator status.

Hofheimer also wrote:

> I do not understand how you arrived at some of your conclusions and accusations, but as noted above, after trying to reason with you, I feel that further attempts to resolve your issues would be futile.  Given the tone of your letter, your further employment would be disruptive to DSA's operation.

Hofheimer testified that she believed, based upon Duncan's January 4, 1999 letter, that he was accusing employer of "running a racket," of trying to prevent Duncan from obtaining operator status, of discrimination, and of several felony offenses, including grand larceny and tax evasion.  She stated that employer had tried to resolve Duncan's concerns in the December 14, 1998 meeting, but to no avail.  She was also concerned, based upon the contents of the letter, that Duncan would involve other employees with his problems, causing disruption of employer's business.

Employer's "General Rules and Policies," which Duncan was aware of, prohibited employees from "[c]reating an oral or written

statement defaming, ridiculing, degrading, or otherwise discrediting the company . . . ."  The policy also prohibited employees from "[t]hreatening, intimidating, coercing, harassing and insulting another employee at any time" or from committing "[b]ehavior that is disruptive to the work of others."  The policy made it clear to the employee that engaging in such conduct could be grounds for termination from employment.

> [A]n employee is guilty of "misconduct connected with his work" when he <u>deliberately</u> violates a company rule reasonably designed to protect the legitimate business interests of his employer, or when his acts or omissions are of such a nature or so recurrent as to manifest a <u>willful</u> disregard of those interests and the duties and obligations he owes his employer.

<u>Branch v. Virginia Employment Comm'n</u>, 219 Va. 609, 611, 249 S.E.2d 180, 182 (1978).  "Whether an employee's behavior constitutes misconduct . . . is a mixed question of law and fact reviewable by this court on appeal."  <u>Israel</u>, 7 Va. App. at 172, 372 S.E.2d at 209.

When viewed in a light most favorable to the Commission and employer, the record establishes that the threatening and accusatory tone of Duncan's January 4, 1999 letter, which contained very serious and at that time, unsubstantiated and defamatory allegations against employer, demonstrated a deliberate and willful disregard of Duncan's duties and obligations to employer which were designed to protect its legitimate business

interests.  Accordingly, Duncan's actions constituted misconduct connected with work.

"Once the employer has borne the burden of showing misconduct connected with the work, . . . the burden shifts to the employee to prove circumstances in mitigation of his or her conduct." Virginia Employment Comm'n v. Gantt, 7 Va. App. 631, 635, 376 S.E.2d 808, 811, aff'd on reh'g en banc, 9 Va. App. 225, 385 S.E.2d 247 (1989).  Whether a claimant's evidence sufficiently mitigates his behavior so as to avoid disqualification for benefits is a question of fact for the Commission.  See Britt v. Virginia Employment Comm'n, 14 Va. App. 982, 986, 420 S.E.2d 522, 525 (1992).

The Commission was not persuaded by Duncan's evidence of mitigating circumstances.  The record supports the Commission's finding that employer discharged Duncan for misconduct connected with work and that Duncan failed to present sufficient evidence in mitigation.  Accordingly, the Commission did not err in disqualifying him from receiving unemployment benefits.

## II.  Additional Evidence

Duncan made a motion before the Commission during the appeals process requesting that it consider additional documentary evidence and witness testimony.  Specifically, Duncan requested that the Commission consider employer's written policy pertaining to "operator status" and "excused and unexcused absences,"

Duncan's complete file, including his employment application and W-4 forms, computerized results from pre-employment typing tests taken by Duncan, and documentation as to how employer calculated the rate of pay for employees who worked on North Carolina claims and for employees who worked on Virginia claims. In addition, Duncan requested that several co-workers be called to testify regarding hiring procedures, production, and pay issues.

The Commission denied Duncan's request, finding that he had not satisfied the criteria contained in 16 VAC 5-80-30(B) for the receipt of additional evidence. Specifically, the Commission found that the additional evidence was not material to the substantive issues in the case, or if received, would not have been likely to produce a different result, and the record prepared by the Appeals Examiner was sufficient to enable the Commission to make proper, accurate, and complete findings of fact and conclusions of law.

The Commission's findings and conclusions are fully supported by the record. Regardless of whether the commission ruled on the admissibility of the evidence in question during the initial stages of the proceedings or during the appeals process, we find that the Commission did not abuse its discretion in refusing to consider the evidence. The additional evidence was not material, relevant, or necessary to the Commission's decision on the substantive issues in this case. Moreover, even if received, the

additional evidence would not have likely produced a different result.  Accordingly, the commission did not err in refusing to consider it.

### III.  Fraud/Due Process/Incomplete Record

We find no basis in fact or law for Duncan's unsubstantiated allegations that the decisions of the circuit court or the Commission's Deputy, Appeals Examiner, or Special Appeals Examiner were somehow procured by fraud or deceit, or that the circuit court's or the Commission's employees and judges were somehow biased against Duncan or predisposed to rule in favor of employer. In addition, we find no merit in his argument that "the file [or record] is 'incomplete'" or that he was denied due process of the law.  On the contrary, Duncan and employer were afforded a reasonable opportunity for a full and fair evidentiary hearing on his claim for unemployment benefits pursuant to the procedures established by statutes and regulations.

For these reasons, the judgment of the circuit court is affirmed.[2]

Affirmed.

---

[2] We deny the Commission's motion to dismiss Duncan's appeal.